CRAVEN PITTMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pittman v. Commissioner
Docket No. 19960-93
United States Tax Court
T.C. Memo 1995-83; 1995 Tax Ct. Memo LEXIS 84; 69 T.C.M. (CCH) 1956; February 27, 1995, Filed *84 Decision will be entered for respondent. Craven Pittman, pro se. For respondent: Ross A. Rowley
POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
By notice of deficiency issued June 16, 1993, respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1990 in the amount of $ 3,932 and an addition to tax under section 6662(a) for negligence in the amount of $ 678. Petitioner resided in Fayetteville, North Carolina, at the time he timely filed the petition. The issues are whether petitioner (1) is entitled to claim a dependency exemption for his son, (2) is entitled to compute his tax on the basis of a head of household filing status, (3) incurred a business loss in the amount of $ 17,639, and (4) is liable for *85 an addition to tax under section 6662(a) for negligence. The facts may be summarized as follows. According to petitioner, he and his wife have been separated since 1984 when his wife went to South Carolina to take care of her mother. At that time petitioner lived in San Bernardino, California. They were not legally separated, and there was no written separation agreement. In 1988 or 1989, the mother died and petitioner's wife moved back to San Bernardino. Prior to that time petitioner lived at 2122 West Chestnut, San Bernardino, California (West Chestnut address). Petitioner claims that he vacated the West Chestnut address, and thereafter lived in "several places" with his son who was at least 24 years old in 1990 and had recently been released from service in the U.S. Coast Guard. Petitioner, however, continued to receive mail at the West Chestnut address, and used that address when he filed his 1990 Federal income tax return. Petitioner is retired from the U.S. Air Force and received a pension in the amount of $ 8,470.20 during 1990. Petitioner was employed full-time as a security guard and was paid $ 17,569.98 during 1990. He also claims that during 1990 he was engaged *86 in two different businesses -- delivering newspapers and preparing income tax returns. On petitioner's 1990 Federal income tax return, petitioner reported his pension and wage income. Petitioner also filed a Schedule C on which he reported $ 5,001 in gross income and claimed a business loss of $ 17,639. Petitioner did not report any income from the newspaper delivery business, and does not know the amount of that income. Petitioner claimed deductions on Schedule C for the following expenses: Advertising
$ 105
Car
4,950
Insurance
1,200
Office
410
Other business property (rent)
3,972
Repairs and maintenance
3,073
Supplies
1,074
Taxes and licenses
456
Travel
600
Utilities
1,311
Telephone
904
Trash
690
Laundry
320
Bank service charges
575
Depreciation
3,000
Total
$ 22,640
Petitioner claimed a dependency exemption for his son, and claimed a filing status of head of household. Upon examination of the return, respondent disallowed all of the Schedule C expenses, except for $ 4,732 for automobile expenses based on 18,200 miles at $ .26 per mile. Respondent also disallowed the dependency exemption claimed for petitioner's son and determined that petitioner's *87 filing status was married filing separately. 1. Dependency Exemption and Filing Status
Section 152(a) provides that a dependent is, inter alia, a child of the taxpayer "over half of whose support * * * [during the taxable year] was received from the taxpayer". There is nothing in this record that remotely suggests that during 1990 petitioner provided over half of the support of his son. Petitioner's son was at least 24 years old and had been in the Coast Guard, which would suggest that he had some other means of support during 1990. Accordingly, petitioner has not established that he is entitled to claim his son as a dependent. See Rule 142(a). Relevant to the facts in this case, section 2(b)(1)(A)(i) defines "head of household" as an individual who is not married at the close of the taxable year, and maintains as his home a household as the principal place of abode for more than one-half of the taxable year of an unmarried child. A person shall be considered not married if the individual is legally separated under a decree of divorce or separate maintenance (secs. 2(b)(2)(B) and 7703(a)(2)), or, if not legally separated, files a separate return and, inter alia, "maintains *88 as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a child * * * with respect to whom such individual is entitled to a deduction * * * [for a dependent]" (secs. 2(c) and 7703(b)). Petitioner was not legally separated, and, as we have already determined, petitioner was not entitled to claim his son as a dependent. Consequently petitioner may not claim head-of-household filing status. [2] Respondent's determinations as to these issues are sustained. 2. Schedule C Business Expenses
Section 162 allows a deduction for ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. There appear to be two problems with petitioner's Schedule C deductions. First, petitioner *89 presented no records supporting the deductions that he claimed. Petitioner claims that his records are in a storage facility in California. The examination of petitioner's return occurred more than 2 years before trial; he produced no records at the time of the examination. Petitioner has known for at least 2 years that he would have to substantiate his claimed expenses. Petitioner's wife and adult children still reside in California, and he offered no credible explanation as to the reason his records could not have been sent to him. [3]
Second, petitioner's testimony concerning these business activities was hardly compelling. It was vague and at times inherently incredible. Petitioner claimed expenses for the newspaper delivery service, but he admittedly did not report any income from that activity. Furthermore, some of the expenses, e.g., laundry for ordinary *90 clothes, are clearly not deductible. Sec. 262. [4] In sum, petitioner has not established that he is entitled to business deductions in any greater amount than that allowed by respondent, and we sustain respondent on this issue. Rule 142(a). 3. Addition to Tax
Section 6662 imposes an addition to tax equal to 20 percent of the underpayment due to negligence or disregard of rules or regulations. Sec. 6662(a) and (b). "Negligence" includes the failure to make a reasonable attempt to comply with the provisions of the Code, and "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). The burden of overcoming respondent's determination of the addition to tax rests with the taxpayer. Rule 142(a). *91 A taxpayer is required to keep books and records. Sec 6001. Petitioner has not established that he kept adequate books and records. Furthermore, as stated above, some of the deductions claimed are clearly improper. Petitioner claims to have prepared income tax returns as a business, and surely has knowledge of the most fundamental rules and regulations. From what we have seen, petitioner, however, intentionally disregarded those rules and regulations. Respondent's determination as to the addition to tax under section 6662(a) is sustained. Decision will be entered for respondent.
Footnotes
1. Section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. While we sustain respondent's disallowance of the head-of-household status on other grounds, we also are not convinced that petitioner's wife was not a member of his household during the last 6 months of the taxable year. See sec. 7703(b)(3). ↩
3. Petitioner's only comment in this regard was "But I am not going to spend the money to go back and get records to come bring [sic] and show them."↩
4. At the end of the trial, the Court directed the parties to file post-trial memoranda setting forth their positions with respect to the facts and the law. Respondent timely filed a memorandum; petitioner, however, did not chose to enlighten the Court with respect to the issues in this case.↩